UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


FRANK W. KERR COMPANY,

    Plaintiff,

vs.                                                                            Case No. 16-14307

WALNUT ASSOCIATES 1, LLC,                  HON. AVERN COHN
d/b/a WEST GRANGE PHARMACY,

    Defendant.
_____/

**MEMORANDUM AND ORDER
GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 20)
AND
DENYING DEFENDANT'S DEFENDANT'S MOTION TO DEFER CONSIDERATION OF PLAINTIFF'S MOTION (Doc. 25)
AND
DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION TO STRIKE AFFIDAVIT OF JEFFREY TISCHLER (Doc. 24)[1]
AND
DIRECTING THE MATTER BE REFERRED TO THE MAGISTRATE JUDGE**

I. Introduction

This is essentially an accounting dispute. Plaintiff Frank W. Kerr Company (Kerr) is suing defendant Walnut Associates, LLC d/b/a West Grange Pharmacy (West Grange) seeking to collect on a debt. Kerr is a debtor in possession (DIP) following filing for bankruptcy which is now in Chapter 11. Kerr says that West Grange owes $1,930,943 in unpaid phармeceutical goods delivered to West Grange from June 16,

---

    [1]Upon review of the parties' papers the Court deems these matters appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

2015 to June 30, 2016. West Grange concedes it owes Kerr monies. It says the amount owing under an agreed upon system of debits and credits and "frozen" accounts, is $682,000.00–an amount West Grange is willing and ready to pay.

The complaint is in three counts: (1) breach of contract, (2) account stated, (3) unjust enrichment. (Doc. 1)

Before the Court are the following motions:

Kerr's motion for partial summary judgment[2] (Doc. 20)

West Grange's motion to defer consideration of Kerr's motion (Doc. 25)

West Grange's motion to strike the affidavit of Jeffrey Tischler (Doc. 24)

For the reasons that follow, Kerr's motion will be granted in part and denied in part. West Grange's motion to defer will be denied as moot and West Grange's motion to strike will be denied.

## II. Background

The material facts as gleaned from the parties' papers follow.

Kerr, until its bankruptcy, was a distributor of pharmaceuticals, pharmaceutical supplies, and over the counter medications which it sold to pharmacies, including West Grange. For more than 15 years, from 1996 to 2016, West Grange purchased pharmaceutical goods from Kerr on credit under the terms of an Inventory Finance Agreement.

In June of 2016, prior to the bankruptcy proceedings, Conway MacKenzie (CM)

---

[2]It is unclear why Kerr moved for "partial" summary judgment inasmuch as it seeks "summary judgment in its favor on liability and damages as to all counts of the complaint." (Doc. 20).

prepared a report entitled Meeting with JP Morgan Chase N.A. and Comerica Bank (the "Lenders"), Senior Lenders to Frank W. Kerr Company.  The report states that CM was engaged by Kerr to provide financial advice and restructuring services.  It also states that Jeffrey Tischler of CM was appointed Chief Restructuring Officer.  CM recommended a liquidation of Kerr.  Page 12 of the report is entitled Kerr Wind-Down - Key Assumptions: Accounts Receivable; it also contains a column for "Frozen Balances."  The listing for West Grange states the following amounts:

```
Balance          1,749
Recovery %       39.0%
Recovery         682
```

On June 30, 2016, Kerr ceased operations.  Thereafter, certain unsecured creditors of Kerr filed an involuntary petition under Chapter 7.  On September 20, 2016, Kerr consented to entry of an order converting it to a Chapter 11.

The parties vigorously dispute the accounting for West Grange's indebtedness. The parties' varied description of the accounting documents is evidenced by two competing affidavits.  Kerr offers the "affidavit" of Jeffrey Tischler,[3] the appointed Chief Restructuring Officer.  West Grange offers the affidavit of Richard Grossman, identified as a member of West Grange.  Grossman is also identified as a member of the Board of Directors of Kerr.

As Tischler explains, to evidence the West Grange's Indebtedness, Kerr would provide West Grange with account statements reflecting the amounts purchased, paid, or otherwise credited.  Kerr has submitted several account statements from June 16,

---

[3]As noted above, West Grange has moved to strike Tischler's affidavit on the grounds it is not based on personal knowledge and is not notarized.

2015 to June 30, 2016 which it says establishes West Grange's indebtness in the requested amount of approximately $1.9 million. Kerr also points to a Wind Down plan attached as Exhibit C to its motion for summary judgment. The Wind Down plan, marked "draft," states the following as to West Grange:

| | |
|---|---|
| Balance as of 5/31/16 | 1,762 |
| Adj. Balance | 1,762 |
| Adj. | 30% |
| Recovery | 60% |
| Recovery | 1,067 |

The Wind Down plan is attached to a Resolution of the Board of Directors of Kerr dated June 8, 2016 and signed by Ann Y. Newman, William G. Newman, and Richard Grossman.

West Grange, through Grossman, explains that starting in 2008, it objected to the account statements sent to it by Kerr for the reasons that (1) Kerr was not, despite a promise, offering West Grange the lowest price it was offering other customers, (2) Kerr was not timely crediting West Grange's account for its share of rebates. West Grange, again through Grossman, says that in order to retain West Grange's business, Kerr, through Ann Newman, agreed that the published prices would not apply to Kerr nothwithstanding account statements to the contrarty. Grossman goes on to state that Newman advised him that she instructed the Chief Financial Officer, Thoedore Toloff, to work with the salespeople at Kerr to account for the overcharges and adjust the published prices. Apparently, the adjustments were made using a "frozen" account method. Thus, Grossman says that the account statements Kerr now relies on to arrive at the $1.9 million are not correct. West Grange also points to the CM report which states the account receivable collectible by Kerr is "$682" - the amount West Grange is

4

willing to pay.

The parties' dispute came to a head on July 8, 2016 when Tischler sent a demand letter to West Grange in the amount of $1,748,616.02 and requesting a "detailed accounting" showing what West Grange believes is owed. On July 18, 2016, West Grange, through Grossman, responded and objected to the amount of the debt.

This lawsuit followed.

After a status conference, the Court entered an order stating its intention to appoint an accounting master. (Doc. 15) The Court also directed Kerr to submit "an itemized list of debits which total the amount claimed due and owing" and West Grange to submit "an itemized list of credits to which it believes it is entitled which total the amount claimed due and owing." Id. Neither list is particularly helpful. Kerr's list is a series of invoices, balances, purchases, payments, credits, etc. which claims an ending balance of $1,930,943. West Grange's statement is nothing more that a list which shows a "total" of $7,558,381.78. No where does it contain an explanation or calculation to the amount it says it owes.

III. Conclusion

Given West Grange's admission that it owes Kerr $682,000.00 and its statement that it is willing and ready to pay this amount, partial judgment shall enter in favor of Kerr in this amount. To this extent, Kerr's motion for partial summary judgment is GRANTED.

As to whether West Grange owes additional monies, the record is unclear. The competing statements of Tischler and Grossman together with the confusing and conflicting accounting records do not conclusively establish that Kerr is entitled to

5

additional monies. As to any monies owed to Kerr beyond $682,000.00, Kerr's motion for partial summary judgment is DENIED.

In light of this determination, West Grange's motion to defer consideration is MOOT and West Grange's motion to strike Tischler's affidavit is DENIED WITHOUT PREJUDICE.

Finally, the matter will be referred to the magistrate judge for further proceedings, which the Court envisions to be along the lines of an action for accounting[4] to determine what, if any, additional monies are owed to Kerr.

SO ORDERED.

S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: August 10, 2017
      Detroit, Michigan

---

[4] An accounting is an equitable remedy under the common law. Basinger v. Provident Life & Accident Ins. Co., 67 Mich. App 1, 6 (1976). The purpose of ordering an accounting is to determine the amount due to a party. Id. In cases filed at law, such a determination generally is left to the jury. Id. But the equitable remedy of an accounting developed in courts of equity because it was "evident that many cases arise in which the determination of what is justly due to a plaintiff necessarily involves long and difficult inquiries—for instance, it may be necessary to review a series of transactions extending over many years. For such an investigation a jury is clearly incompetent." Id. at 6–7 (quotation marks and citation omitted). "The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is...the absence of an adequate remedy at law." Dairy Queen, Inc. v. Wood, 369 U.S. 469, 478 (1962). The Supreme Court, in Dairy Queen, explained that in order to maintain a suit for an equitable accounting, "the plaintiff must be able to show that the 'accounts between the parties' are of such a 'complicated nature' that only a court of equity can satisfactorily unravel them." Dairy Queen, 369 U.S. at 478 (quoting Kirby v. Lake Shore & Michigan Southern R. Co., 120 U.S. 130, 134 (1887)).